## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Megan K. Boziak, | : | Case No. 1:12 CV 2671 |
| | : | |
|      Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| Commissioner of Social Security, | : | **REPORT AND** |
|      Defendant, | : | **RECOMMENDATION** |

## I. INTRODUCTION

Plaintiff Megan K. Boziak ("Plaintiff") seeks judicial review pursuant to 42 U.S.C. § 405(g) of Defendant Commissioner's ("Defendant" or "Commissioner") final determination denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 (Docket No. 1). Pending are Defendant's Motion to Remand (Docket No. 15), Plaintiff's Objections (Docket No. 16), and Defendant's Response (Docket No. 17). For the reasons that follow, the Magistrate recommends Defendant's Motion be denied, the decision of the Commissioner reversed, and the case remanded for further consideration consistent with this opinion.

## II. PROCEDURAL BACKGROUND

1

On February 29, 2008, Plaintiff filed an application for SSI under Title XVI of the Social

Security Act, 42 U.S.C. § 1381 (Docket No. 10, p. 85 of 692). Plaintiff alleged a period of disability

beginning February 1, 2004 (Docket No. 10, p. 85 of 692). Plaintiff's claim was denied initially on

May 7, 2008 (Docket No. 10, p. 44 of 692), and upon reconsideration on October 1, 2008 (Docket No.

10, p. 49 of 692). Plaintiff thereafter filed a timely written request for a hearing on October 7, 2008

(Docket No. 10, p. 56 of 692).

On August 16, 2010, Plaintiff appeared with counsel for a hearing before Administrative Law

Judge Peter Beekman ("ALJ Beekman") (Docket No. 10, pp. 25-41 of 692). Also appearing at the

hearing was an impartial Vocational Expert ("VE") (Docket No. 10, pp. 38-41 of 692) and a medical

expert (Docket No. 10, pp. 36-38 of 692). ALJ Beekman found Plaintiff to have a severe combination

of bipolar disorder, personality disorder, and drug abuse (Docket No. 10, p. 17 of 692).

Despite these limitations, ALJ Beekman determined that, based on all the evidence presented,

Plaintiff had not been disabled within the meaning of the Social Security Act at any time from the

alleged onset date through the date of his decision (Docket No. 10, p. 24 of 692). ALJ Beekman found

Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels

with the following non-exertional limitations: (1) no more than simple, routine tasks involving no more

than low stress with no production quotas or piece work; (2) no work involving arbitration,

confrontation, or negotiation; and (3) no more than minimal superficial interpersonal interaction with

the public and coworkers (Docket No. 10, p. 19 of 692). ALJ Beekman found Plaintiff capable of: (1)

understanding, remembering, and carrying out simple instructions; (2) responding appropriately to

supervision, coworkers, and usual work situations; and (3) adjusting to minor changes in a routine

work setting (Docket No. 10, p. 19 of 692). Plaintiff's request for benefits was therefore denied

2

(Docket No. 10, p. 24 of 692).

On October 25, 2012, Plaintiff filed a Complaint in the Northern District of Ohio, Eastern Division, seeking judicial review of her denial of SSI (Docket No. 1). In her pleading, Plaintiff alleged: (1) the ALJ erred by finding Plaintiff's alleged substance abuse to be a contributing factor material to the determination of her disability; and (2) the ALJ's decision with regard to Plaintiff's residual functional capacity was not supported by substantial evidence (Docket No. 12). Defendant filed its Answer on January 4, 2013 (Docket No. 9). On April 26, 2013, Defendant filed a Motion to Remand Plaintiff's case to the Commissioner of Social Security for further evaluation of Plaintiff's alleged substance abuse disorder (Docket No. 15). On April 30, 2013, Plaintiff filed an Objection to Defendant's Motion, seeking instead a reversal of the Commissioner's decision and an award of benefits from this Court (Docket No. 16). Defendant filed a response on May 13, 2013 (Docket No. 17).

### III.  FACTUAL BACKGROUND

#### A.    ADMINISTRATIVE HEARING

An administrative hearing convened on August 16, 2010, in Cleveland, Ohio (Docket No. 10, pp. 25-41 of 692). Plaintiff, represented by counsel Katherine Braun, appeared and testified (Docket No. 10, pp. 28-35 of 692). Also present and testifying was medical expert Dr. Gottfried Spring ("Dr. Spring") and VE Mark Anderson ("VE Anderson") (Docket No. 10, pp. 36-41 of 692).

#### 1.    PLAINTIFF'S TESTIMONY

At the time of the hearing, Plaintiff was twenty-one years old and had completed two years of

college (Docket No. 10, p. 28 of 692). Plaintiff admitted to last using phencyclidine ("PCP")[1] four months prior to the hearing and marijuana two months prior to the hearing (Docket No. 10, p. 28 of 692). She denied using any other substance (Docket No. 10, pp. 27-28 of 692). Plaintiff did not have a driver's license, claiming she does not like to drive (Docket No. 10, p. 34 of 692).

Plaintiff testified she last worked in 2008 at a clothing store (Docket No. 10, p. 34 of 692). That job lasted four days because the store went out of business (Docket No. 10, p. 34 of 692). Prior to that, Plaintiff worked for four months at a Burger King restaurant (Docket No. 10, p. 34 of 692). When asked why her employment did not last longer, Plaintiff stated she had a conflict with one of her bosses and was asked to leave (Docket No. 10, p. 35 of 692). Plaintiff also worked in a retail store but was terminated after reportedly being rude (Docket No. 10, p. 35 of 692). Plaintiff indicated her biggest obstacle in returning to work was her ability to remember things (Docket No. 10, p. 35 of 692).

When asked to describe her typical day, Plaintiff testified that she wakes up, goes to school, comes home and sleeps, eats, and then goes out either to the mall or sometimes to the movies (Docket No. 10, p. 29 of 692). She usually spends two to three hours on homework (Docket No. 10, p. 30 of 692). Plaintiff stated she has some difficulty remembering what she reads and indicated she did not pass her summer classes (Docket No. 10, pp. 30-31 of 692).

Plaintiff also testified about her mood swings. She indicated that she gets "angry a lot," has crying spells, and cannot be around other people (Docket No. 10, p. 31 of 692). Her medication sometimes helps, but she experiences side effects such as nausea, dizziness, and headaches (Docket

---

[1] A medicinal substance, used intramuscularly as an anesthetic. ATTORNEYS' DICTIONARY OF MEDICINE, P-90701. The drug has both stimulant and depressant effects on the central nervous system and produces lethargy, disorientation, and hallucinations. It is a popular drug of abuse, administered orally or by smoking, snorting, or intravenous injection. High doses can result in hypertension, convulsions, coma, and fatality. *Id.* at P-90702.

No. 10, p. 32 of 692). Plaintiff also indicated she has difficulty sleeping, and often spends the night

talking on the phone or surfing the Internet (Docket No. 10, p. 32 of 692).

2.      **MEDICAL EXPERT TESTIMONY**

Dr. Spring testified Plaintiff had been diagnosed with bipolar II disorder and borderline

personality disorder characterized by social withdrawal, a low frustration tolerance, and poor impulse

control (Docket No. 10, p. 37 of 692). Dr. Spring indicated that, in his opinion, Plaintiff's condition

equaled the listings (Docket No. 10, pp. 37-38 of 692). The ALJ questioned Dr. Spring at some length

regarding the effects of PCP (Docket No. 10, pp. 37-38 of 692). Dr. Spring confirmed that an

individual using PCP is prone to bursts of anger or rage, amnesia, forgetfulness, and aggravated

ADHD symptoms (Docket No. 10, pp. 37-38 of 692).

3.      **VOCATIONAL EXPERT TESTIMONY**

Having familiarized himself with Plaintiff's file and vocational background prior to the

hearing,

the VE indicated Plaintiff's past earnings failed to qualify as any significant past work (Docket No. 10,

pp. 38-39 of 692). ALJ Beekman then posed his first hypothetical question: "[t]he person is female, 21

years of age, no exertional limitations. However, this person can do simple routine tasks, low-stress

work. No high production quotas or piece rate work []. No work involving arbitration, negotiation, or

confrontation. Superficial interpersonal interactions with public and coworkers" (Docket No. 10, p. 39

of 692). Based on these limitations, the VE stated there was other work in the economy Plaintiff could

do, including: (1) hand packager, listed under DOT 920.587-018, for which there are 107,000 positions

nationally and 2,500 locally; (2) assembler of small products, listed under DOT 739.687-030, for

which there are 288,000 positions nationally, and 5,500 locally; and (3) inspector and hand packager,

5

listed under DOT 559.687-074, for which there are 240,000 positions nationally and 4,500 locally (Docket No. 10, pp. 39-40 of 692).

ALJ Beekman then added to this question, requiring the hypothetical person to be off task fifteen percent of the time (Docket No. 10, p. 40 of 692). Based on this additional limitation, the VE indicated there would be no work for an individual so limited (Docket No. 10, p. 40 of 692).

## B.    MEDICAL RECORDS

Plaintiff's medical records date back to September 8, 2005, when Plaintiff saw Dr. Thomas J. Thysseril, MD ("Dr. Thysseril") at Oak Tree Behavioral Health (Docket No. 10, p. 347 of 692). Plaintiff complained of moderate anger, insomnia, lack of motivation, irritability, hyperactivity, attention deficit hyperactivity disorder ("ADHD"),[2] rapid speech, depression, and impulsivity (Docket No. 10, p. 347 of 692). During the examination, Plaintiff engaged well, displayed a reasonably positive mood and affect, had logical thought content, and showed good insight and judgment (Docket No. 10, pp. 347-48 of 692). Dr. Thysseril diagnosed Plaintiff with bipolar disorder, dysthymic disorder, ADHD, personality disorder, and oppositional defiant disorder ("ODD")[3] (Docket No. 10, p. 348 of 692). Plaintiff was prescribed Lamictal, Risperdal, and Wellbutrin (Docket No. 10, p. 357 of 692). Plaintiff had similar visits with Dr. Thysseril on December 19, 2005, January 18, 2006, January 27, 2006, March 27, 2006, and May 3, 2006 (Docket No. 10, pp. 349-58 of 692).

On June 19, 2006, Plaintiff returned to Dr. Thysseril and reported she had been suspended from

---

[2] A mental disorder with an onset in early childhood, before age seven, that is characterized by difficulties in sustained attention, concentration, and task completion. It may also be accompanied by impulsiveness and hyperactivity. ATTORNEYS' DICTIONARY OF MEDICINE, A-12435 (2009).

[3] A mental disorder, occurring in childhood or adolescence, characterized by disobedience, negativism (tendency to refuse to do), and belligerent opposition to authority. ATTORNEYS' DICTIONARY OF MEDICINE, O-83834.

school for smoking and behavioral problems (Docket No. 10, p. 359 of 692). Plaintiff was only partially compliant with her medications (Docket No. 10, p. 359 of 692). Plaintiff demonstrated a dysphoric mood, reactive affect, tangential thought process, and good impulse control, insight, and judgment (Docket No. 10, pp. 359-60 of 692).

On January 8, 2007, Plaintiff presented to the Parma Community General Hospital Emergency Room ("Parma ER") expressing anxiety over possible exposure to marijuana (Docket No. 10, p. 399 of 692). Plaintiff stated she thought she may have smoked two cigarettes that were laced with marijuana (Docket No. 10, p. 399 of 692). She was afraid to go home, out of fear of repercussions from her father (Docket No. 10, p. 400 of 692). Plaintiff's labwork indicated Plaintiff had not come into contact with marijuana and was instead likely suffering from an anxiety attack (Docket No. 10, p. 401 of 692). Plaintiff returned to Dr. Thysseril on January 18, 2007, and February 16, 2007 (Docket No. 10, pp. 365-68 of 692). Her symptoms and diagnosis were unchanged (Docket No. 10, pp. 365-68 of 692).

During a March 16, 2007, appointment, Dr. Thysseril diagnosed Plaintiff with an anxiety disorder not otherwise specified (Docket No. 10, p. 370 of 692). Plaintiff was started on the anti-depressant Cymbalta (Docket No. 10, p. 371 of 692). Plaintiff's symptoms continued to improve during visits with Dr. Thysseril in April, May, August, and September 2007 (Docket No. 10, pp. 371-84 of 692).

In October 2007, Plaintiff was started on a Lithium routine (Docket No. 10, p. 380 of 692). On October 18, 2007, Plaintiff presented to the Parma ER complaining of depression after an argument with her family (Docket No. 10, p. 386 of 692). At that time she denied any substance abuse but admitted to smoking (Docket No. 10, p. 386 of 692). Plaintiff indicated she was compliant with her medications and stated she had no need for psychiatric hospitalization (Docket No. 10, p. 387 of 692).

Plaintiff was diagnosed with bipolar affective disorder (Docket No. 10, p. 387 of 692). Plaintiff

returned to Dr. Thysseril on December 20, 2007 (Docket No. 10, p. 381 of 692). She displayed a

pleasant mood and good insight and judgment, but an anxious affect, tangential thought process, and

poor impulse control (Docket No. 10, p. 381 of 692).

Plaintiff began therapy with licensed social worker Doug Pannette ("Mr. Pannette") on

February 10, 2008 (Docket No. 10, p. 566 of 692). Plaintiff stated she was depressed, angry, and

irritable, and engaged in fights with family members, authority figures, and peers (Docket No. 10, p.

566 of 692). Plaintiff also demonstrated poor impulse control, racing thoughts, difficulty

concentrating, lack of focus, and a low tolerance for frustration (Docket No. 10, p. 566 of 692). She

suffered from difficulty in both school and employment situations, often unable to keep a job (Docket

No. 10, p. 566 of 692). Plaintiff reported that she was angered and got into conflict easily and was

rigid, defensive, and argumentative (Docket No. 10, p. 566 of 692). Plaintiff denied any alcohol or

substance abuse (Docket No. 10, p. 566 of 692). Mr. Pannette found Plaintiff had a clear thought

process and content, but had poor concentration and memory with difficulty recalling dates (Docket

No. 10, pp. 566-67 of 692). He assigned Plaintiff a Global Assessment of Functioning ("GAF") score

of forty-five[4] (Docket No. 10, p. 567 of 692). Plaintiff saw Mr. Pannette several times in 2008 and

continued to express frustration with family members, anger, anxiety, and sadness (Docket No. 10, pp.

561-65 of 692).

On June 12, 2008, Plaintiff began treatment at Connections: Health.Wellness.Advocacy

---

[4] The Global Assessment of Functioning Scale is a 100-point scale that measures a patient's overall level of psychological, social, and occupational functioning on a hypothetical continuum. A score of forty-five indicates serious symptoms or any serious impairment in social, occupational, or school functioning. THE DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (hereinafter DSM-IV) 34 (Am. Psychiatric Ass'n) (4th ed. 1994).

("Connections"), a behavioral health clinic (Docket No. 10, p. 491 of 692). Plaintiff noted she still had angry outbursts, but reported that they were better than in the past (Docket No. 10, p. 491 of 692). Plaintiff's mother complained that none of Plaintiff's medications were working (Docket No. 10, p. 491 of 692). During a July 10, 2008, appointment, Plaintiff was cooperative and pleasant and reported "doing well" (Docket No. 10, p. 489 of 692). On December 4, 2008, Plaintiff indicated she was starting college and reported no incidents of physical aggression (Docket No. 10, p. 503 of 692). This progress continued until February 2009 when Plaintiff reported difficulty with behavioral and mood management and described recent anger outbursts directed at her grandmother (Docket No. 10, p. 547 of 692). During March and April 2009, Plaintiff reported having difficulty with limits and patience (Docket No. 10, pp. 544-46 of 692).

During an April 28, 2009, appointment, Plaintiff reported an altercation with her grandmother that required police intervention (Docket No. 10, p. 510 of 692). Plaintiff stated she had mood swings and got mad when she did not get her way (Docket No. 10, p. 510 of 692). On June 2, 2009, Plaintiff described a situation in which she got kicked out of the local mall due to an altercation where police were again called to the scene (Docket No. 10, p. 512 of 692). During a June 6, 2009, appointment with Mr. Pannette, Plaintiff's family members indicated they were getting to the point where they could no longer help her (Docket No. 10, p. 541 of 692). Plaintiff was constantly angry and defensive with her grandmother (Docket No. 10, p. 541 of 692). Mr. Pannette noted Plaintiff's progress was fluctuating and inconsistent (Docket No. 10, p. 541 of 692).

On June 23, 2009, Plaintiff underwent an initial psychiatric evaluation at the Center for Families and Children ("CFC") (Docket No. 10, pp. 519-20 of 692). Plaintiff appeared uninterested in the interview (Docket No. 10, p. 519 of 692). She indicated she had failed some college subjects and

expressed an interest in dropping out of school (Docket No. 10, p. 520 of 692). Plaintiff denied drug and alcohol abuse (Docket No. 10, p. 520 of 692). She was diagnosed with bipolar disorder (type II), borderline personality disorder, and ADHD (Docket No. 10, p. 519 of 692). During a June 25, 2009, appointment with Mr. Pannette, Plaintiff stated she wanted to have a baby in order to be eligible for government support (Docket No. 10, p. 540 of 692).

By July 21, 2009, Plaintiff seemed sad and anxious, although Mr. Pannette indicated her progress had become more consistent (Docket No. 10, p. 539 of 692). Plaintiff was again preparing to begin school in August (Docket No. 10, p. 539 of 692). On September 15, 2009, Plaintiff reported having an on again/off again boyfriend (Docket No. 10, p. 537 of 692). Mr. Pannette noted Plaintiff was excitable and anxious but reported more consistent progress (Docket No. 10, p. 537 of 692).

Over the next several months, Plaintiff continued treatment with both Mr. Pannette and staff at CFC. During that time, Plaintiff demonstrated some poor judgment and anxiety, but also organized thought content and appropriate behavior (Docket No. 10, pp. 524-34 of 692). During a December 12, 2009, session with Mr. Pannette, Plaintiff indicated she had been dismissed from school (Docket No. 10, p. 544 of 692). On January 9, 2010, Plaintiff disclosed stealing and some substance abuse behavior, although no details were provided (Docket No. 10, p. 532 of 692). By January 27, 2010, Mr. Pannette was reporting Plaintiff's increased problems with managing her behavior (Docket No. 10, p. 531 of 692). Plaintiff's overall progress fluctuated but was mostly regressive and poor, as Plaintiff failed to recognize the seriousness of her problems (Docket No. 10, p. 531 of 692). On February 15, 2010, Mr. Pannette officially closed Plaintiff's case after thirty-eight treatment sessions (Docket No. 10, p. 530 of 692). Her final diagnosis was mood disorder and severe familial and social discord (Docket No. 10, p.

530 of 692). Despite a one-time GAF score of fifty-four,[5] Plaintiff's score at the time of discharge from treatment was forty-five (Docket No. 10, p. 530 of 692).

On April 22, 2010, Plaintiff reported to the Parma ER complaining that her mental health medications were not working (Docket No. 10, p. 586 of 692). Plaintiff also reported a recent incident during which she pulled a knife on her grandmother during an argument (Docket No. 10, p. 586 of 692). Plaintiff denied drug use but tested positive for PCP (Docket No. 10, pp. 587, 596 of 692). She was transported to a second hospital for inpatient psychiatric care (Docket No. 10, p. 587 of 692).

On July 14, 2010, Plaintiff underwent a mental health assessment (Docket No. 10, pp. 675-77 of 692). Plaintiff was well-groomed, cooperative, fully oriented, and displayed a logical and organized thought process (Docket No. 10, p. 677 of 692). Plaintiff showed fair judgment and insight and had a dysphoric mood with a constricted affect (Docket No. 10, p. 677 of 692). She also denied any drug history (Docket No. 10, p. 675 of 692). Plaintiff was diagnosed with bipolar disorder and chronic mental illness and was assigned a GAF score between fifty-one and sixty[6] (Docket No. 10, p. 677 of 692).

C.    **EVALUATIONS**

  1.    **MENTAL RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT**

On May 6, 2008, Plaintiff underwent a Mental Residual Functional Capacity Assessment with state examiner Dr. Katherine Lewis, Psy.D. ("Dr. Lewis") (Docket No. 10, pp. 469-72 of 692). Dr. Lewis found Plaintiff to be markedly limited in several categories, including Plaintiff's ability to: (1)

---

[5] A score of fifty-four indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. DSM-IV at 34.

[6] A score between fifty-one and sixty indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. DSM-IV at 34.

understand and remember detailed instructions; (2) carry out detailed instructions; and (3) interact

appropriate with the general public (Docket No. 10, pp. 469-70 of 692). Plaintiff was moderately

limited in her ability to: (1) maintain attention and concentration for extended periods; (2) complete a

normal workday and work week without interruptions from psychologically based symptoms and to

perform at a consistent pace without an unreasonable number and length of rest periods; (3) accept

instructions and respond appropriately to criticism from supervisors; (4) get along with coworkers or

peers without distracting them or exhibiting behavioral extremes; and (5) respond appropriately to

changes in the work setting (Docket No. 10, pp. 469-70 of 692).

### 2.    PSYCHIATRIC REVIEW TECHNIQUE

On the same day, Dr. Lewis also completed a Psychiatric Review Technique for Plaintiff

(Docket No. 10, pp. 473-86 of 692). Dr. Lewis noted Plaintiff suffered from ADHD, bipolar disorder,

anxiety disorder not otherwise specified, and panic disorder not otherwise specified (Docket No. 10,

pp. 473-82 of 692). In assessing "Paragraph B" criteria,[7] Dr. Lewis found Plaintiff to have a mild

degree of limitation with regard to her activities of daily living and moderate difficulty in maintaining

social functioning as well as concentration, persistence, and pace, with no episodes of decompensation

(Docket No. 10, p. 483 of 692). Dr. Lewis did not find the presence of any "Paragraph C" criteria[8]

(Docket No. 10, p. 484 of 692).

### IV. STANDARD OF DISABILITY

The Commissioner's regulations governing the evaluation of disability for DIB and SSI are

---

[7] Paragraph B criteria "describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity." 20 C.F.R. § 404, Subpart P, Appendix 1, § 12.00(A).

[8] Paragraph C criteria also "describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity." 20 C.F.R. § 404, Subpart P, Appendix 1, § 12.00(A).

identical for purposes of this case, and are found at 20 C.F.R. §§ 404.1520 and 416.920. *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007). DIB and SSI are available only for those who have a "disability." 42 U.S.C. § 423(a), (d); *see also* 20 C.F.R. § 416.920. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Colvin*, 475 F.3d at 730 (*citing* 42 U.S.C. § 423(d)(1)(A)) (definition used in the DIB context); *see also* 20 C.F.R. § 416.905(a) (same definition used in the SSI context).

The Commissioner uses a five-step sequential evaluation process to evaluate a DIB or SSI claim. First, a claimant must demonstrate he is not engaged in "substantial gainful activity" at the time he seeks disability benefits. *Colvin*, 475 F.3d at 730 (*citing Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). Second, a claimant must show he suffers from a "severe impairment." *Colvin*, 475 F.3d at 730. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id*. (*citing Abbott,* 905 F. 2d at 923). At the third step, a claimant is presumed to be disabled regardless of age, education, or work experience if he is not engaged in substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets the requirements of a "listed" impairment. *Colvin*, 475 F.3d at 730.

Prior to considering step four, the Commissioner must determine a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). An individual's residual functional capacity is an administrative "assessment of [the claimant's] physical and mental work abilities – what the individual can or cannot do despite his or her limitations." *Converse v. Astrue*, 2009 U.S. Dist. LEXIS 126214, *16 (S.D. Ohio 2009); *see also* 20 C.F.R. § 404.1545(a). It "is the individual's *maximum*

remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis . . . A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Converse*, 2009 U.S. Dist. LEXIS 126214 at *17 (*quoting SSR* 96-8p, 1996 SSR LEXIS 5 (July 2, 1996) (emphasis in original) (internal citations omitted)).The Commissioner must next determine whether the claimant has the residual functional capacity to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If he does, the claimant is not disabled.

Finally, even if the claimant's impairment does prevent him from doing past relevant work, the claimant will not be considered disabled if other work exists in the national economy that he can perform. *Colvin*, 475 F.3d at 730 (*citing Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (internal citations omitted) (second alteration in original)). A dispositive finding by the Commissioner at any point in the five-step process terminates the review. *Colvin*, 475 F.3d at 730 (*citing* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).

## V. The Commissioner's Findings

After careful consideration of the disability standards and the entire record, ALJ Beekman made the following findings:

1.  Plaintiff has not engaged in substantial gainful activity since February 7, 2008, the application date.

2.  Plaintiff has the following severe impairments: bipolar disorder, personality disorder, and drug abuse.

3.  Plaintiff's impairments, including the substance use disorder, medically equal sections 12.04, 12.08, and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1.

4.  If Plaintiff stopped the substance use, the remaining limitations would cause more than a minimal impact on Plaintiff's ability to perform basic work activities; therefore, Plaintiff would continue to have a severe impairment or combination of

14

impairments.

5.  If Plaintiff stopped the substance use, Plaintiff would not have an impairment or combination of impairments that meets or medically equals any of the impairments list in 20 C.F.R. Part 404, Subpart P, Appendix 1.

6.  If Plaintiff stopped the substance use, she would have the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: (1) no more than simple, routine tasks involving no more than low stress work without production quotas or piece work; (2) no work involving arbitration, confrontation, and negotiation; and (3) no more than minimal superficial interpersonal interaction with the public and coworkers. Plaintiff has the ability of: (1) understanding, remembering, and carrying out simple instructions; (2) responding appropriately to supervision, coworkers, and usual work situations within the environment described above; and (3) adjusting to minor change in a routine work setting.

7.  Plaintiff has no past relevant work.

8.  Plaintiff was born on January 28, 1989, and was 19 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

9.  Plaintiff has at least a high school education and is able to communicate in English.

10.  Transferability of job skills is not an issue because Plaintiff does not have past relevant work.

11.  If Plaintiff stopped the substance use, considering her age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that Plaintiff could perform.

12.  As Plaintiff would not be disabled if she stopped the substance use, her substance use disorder is a contributing factor material to the determination of disability. Thus, Plaintiff has not been disabled within the meaning of the Social Security Act at any time from the date the application was filed through the date of this decision.

(Docket No. 10, pp. 15-24 of 692). ALJ Beekman denied Plaintiff's request for SSI benefits (Docket

No. 10, p. 24 of 692).

## VI. STANDARD OF REVIEW

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42

U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *McClanahan v. Comm'r of Soc. Sec.,* 474 F.3d 830, 832-33 (6th Cir. 2006). In conducting judicial review, this Court must affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence. *Id.* (*citing Branham v. Gardner*, 383 F.2d 614, 626-27 (6th Cir. 1967)). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . ." *McClanahan*, 474 F.3d at 833 (*citing* 42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (*citing Besaw v. Sec'y of Health and Human Servs*., 966 F.2d 1028, 1030 (6th Cir. 1992)). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (*citing Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted)).

## VII. DISCUSSION

### A.    DEFENDANT'S MOTION TO REMAND

Defendant contends, much as Plaintiff does in her Brief on the Merits, that remand of this case is necessary to properly determine if Plaintiff's alleged substance abuse disorder is a contributing factor material to a determination of Plaintiff's disability (Docket No. 15).

### B.    PLAINTIFF'S RESPONSE

In her Response to Defendant's Motion to Remand, Plaintiff objects to a remand alone, arguing instead for a reversal and complete award of benefits from this Court (Docket No. 16).

16

C.    DISCUSSION

1.    SUBSTANCE ABUSE

Under Social Security regulations, if the Commissioner "finds that [a claimant is] disabled and [has] medical evidence of [his] drug addition or alcoholism, [the Commissioner] must determine whether [his] drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 416.935(a). The key factor in determining whether drug addiction or alcoholism is a contributing material factor is whether the Commissioner would still find the claimant to be disabled if the claimant stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b)(1). The ALJ must evaluate which of the claimant's current impairments would remain if he stopped using drugs or alcohol and then determine whether any or all of the claimant's remaining limitations would continue to be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the remaining limitations are not disabling, the ALJ must find the claimant's drug or alcohol addiction to be a contributing factor material to the determination of disability and deny benefits. 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i).

Here, ALJ Beekman found Plaintiff's substance abuse to be a contributing factor material to a determination of disability (Docket No. 10, p. 24 of 692). However, based on his review of Plaintiff's medical record, ALJ Beekman determined that if Plaintiff discontinued her drug use, she would not have any impairment, or combination of impairments, that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Docket No. 10, p. 18 of 692).

Judicial review of the Commissioner's findings is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his conclusion. *Richardson v. Perales*, 402 U.S. 389

17

(1971). "In determining whether the [Commissioner's] factual findings are supported by substantial evidence, [the court] must examine the evidence in the record taken as a whole." *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992) (*citing Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980)).

A review of ALJ Beekman's decision shows that the ALJ failed to cite substantial evidence to support his determination on the impact of Plaintiff's alleged substance use on the disability determination. Plaintiff underwent considerable treatment and psychological counseling with Dr. Thysseril, Mr. Pannette, and staff at Connections and CFC (Docket No. 10, pp. 343-692 of 692). None of these mental health professionals indicated Plaintiff had a substance use disorder (Docket No. 10, pp. 343-692 of 692). Furthermore, the record itself reveals no diagnosis of a substance use disorder (Docket No. 10, pp. 343-692 of 692). Plaintiff's medical records date back to September 8, 2005 (Docket No. 10, p. 347 of 692). The first mention of substance use is January 9, 2010, when Plaintiff mentioned something about substance use to Mr. Pannette (Docket No. 10, p. 532 of 692). No details were provided (Docket No. 10, p. 532 of 692). In fact, Plaintiff adamantly denied substance use or abuse on multiple occasions (Docket No. 10, pp. 520, 566, 587, 675 of 692). On January 28, 2007, Plaintiff presented to the Parma ER after having worked herself into a panic attack thinking she might have smoked two cigarettes laced with marijuana (Docket No. 10, pp. 399-401 of 692).

Furthermore, Plaintiff's medical record contains no meaningful history of substance use or abuse. Plaintiff tested positive for PCP on April 22, 2010 (Docket No. 10, p. 596 of 692). Following that test, Plaintiff admitted once weekly marijuana use on five occasions between May 3, 2010, and July 21, 2010 (Docket No. 10, pp. 625-84 of 692). During her August 16, 2010, administrative hearing, Plaintiff testified she last used PCP four months earlier and last used marijuana two months earlier,

18

which is consistent with the balance of Plaintiff's medical record (Docket No. 10, p. 28 of 692). During his testimony, Dr. Spring indicated that an individual using PCP was prone to bursts of anger or rage, amnesia, and forgetfulness (Docket No. 10, p. 37 of 692). However, Dr. Spring did not include drug use as one of Plaintiff's severe impairments; rather, he found only bipolar disorder, borderline personality, ADHD, and concentration issues (Docket No. 10, pp. 37-38 of 692). Given such minimal evidence, this Magistrate finds the ALJ erred by finding substance use to be a factor material to the determination of Plaintiff's potential disability.

### 2.    REMAND

Under sentence four of 42 U.S.C. § 405(g), a district court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." However, "[a] judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Given ALJ Beekman's failure to provide adequate support for his decision concerning Plaintiff's alleged substance use, this Magistrate recommends the decision of the Commissioner be reversed with regards to Plaintiff's alleged substance use and the case remanded pursuant to sentence four of 42 U.S.C. § 405(g).

## VIII. CONCLUSION

For the foregoing reasons, the Magistrate recommends this matter be reversed and remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for reconsideration by a different ALJ. The Commissioner is ordered to consider Plaintiff's entire medical history and record absent any substance use issues.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:   August 7, 2013

20

## IX. NOTICE

Please take notice that as of this date the Magistrate's report and recommendation attached hereto has been filed. Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to the report and recommendations within fourteen (14) days after being served with a copy thereof. Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure. The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals. In *Thomas v. Arn*, 106 S.Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.